# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSHUA CALDWELL,** | : | **CIVIL NO. 1:CV-09-00545** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **LUZERNE COUNTY CORRECTIONS** | : | |
| **FACILITY MANAGEMENT** | : | |
| **EMPLOYEES,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

# M E M O R A N D U M

Plaintiff Joshua Caldwell ("Caldwell") initiated this civil rights action on March 25, 2009, with a complaint filed pursuant to the provisions of 42 U.S.C. § 1983, (Doc. 1), as amended on September 11, 2009, (Doc. 30). Caldwell sets forth allegations against several employees of the Luzerne County Corrections Facility ("LCCF") in Wilkes-Barre, Pennsylvania.[1] He contends that Defendants violated his constitutional rights when he was forcibly removed from his cell or the shower on three separate occasions. He also claims that on two other occasions, certain Defendants retaliated

---

[1] Caldwell names as Defendants in the amended complaint Luzerne County Corrections Facility Management Employees; Lieutenant Officer Gary Seman; Deputy Warden Sam Hyder; Major James Larson; Captain Officer Jon Sleboda; Captain Officer Jon Carey; Lieutenant Officer Joseph Ameen; Lieutenant Officer Shera Souchick; Lieutenant Officer John Domagaller; Sergeant Officer Anthony Pointkowski; Sergeant Officer Joe Majchko; Corrections Officer Mike Luchetti; Corrections Officer Steve Coslett; Corrections Officer Rich Hall; Corrections Officer Timothy Lutton; Corrections Officer Mitkowski; Corrections Officer Matt Morris; Registered Nurse Jane Doe; Registered Nurse John Doe; Corrections Officer John A. Doe; and Corrections Officer John B. Doe.

against him for his filing lawsuits and used excessive force in escorting him from the shower or recreation area to his cell.

Before the court is a motion to dismiss the amended complaint filed on behalf of Defendants.  (Doc. 49.)  For the reasons set forth below, the motion will be granted in part and denied in part.

## I.  Background

### A.  Facts

In the amended complaint, Plaintiff provides the following factual background with respect to the five incidents.  The court notes that for purposes of disposition of the instant motion to dismiss, the factual allegations asserted in the amended complaint will be accepted as true and viewed in the light most favorable to Caldwell.

#### 1.  February 18, 2009 Incident

On February 18, 2009, at 12:30 a.m., Caldwell was removed from his cell in LCCF's Restricted Housing Unit ("RHU") by the Immediate Response Team ("IRT") for allegedly banging on his cell door.  (Doc. 30 ¶¶ 1-3.)  However, another inmate admitted to Defendant Lieutenant Seman at the time that he had been banging on the door rather than Caldwell.  (*Id*. ¶ 4.)  Caldwell was placed in handcuffs and shackles and escorted to LCCF's B-Block.  (*Id*. ¶ 5.)  Upon entry into a cell in that unit,

Caldwell's right handcuff and shackles were removed. (*Id*. ¶¶ 6-7.) Before Caldwell could "do anything," members of the IRT tased him with an electric shield. (*Id*. ¶ 8.) While he was being tased, Defendants Lieutenant Seman and Captain Sleboda yelled, "Stop resisting, stop resisting." (*Id*. ¶ 9.) However, Caldwell was not resisting; rather, when the electric shield touched his back he fell forward from the shock and hit his forehead on the wall of the cell, causing it to split and bleed. (*Id*. ¶¶ 10-12.) Further, while his forehead was pressed against the wall, causing his neck to bend, Defendants Officers John A. Doe and John B. Doe continued to press the electric shield against Caldwell's back. (*Id*. ¶ 13.) As a result, his body jolted and his back became numb. (*Id*. ¶ 14.) Caldwell was then placed in 5-point restraints on a bare steel bedframe. (*Id*. ¶¶ 15-16.) Officers cut off his jumpsuit and underwear, leaving Caldwell naked on the bedframe. (*Id*. ¶¶ 17-18.) He remained naked on the cold bedframe for about a half-hour. (*Id*. ¶ 20.) After that half-hour, Defendants Officers Luchetti, John B. Doe and Lieutenant Seman entered the cell with a thin blanket. (*Id*. ¶ 21.) Defendant Lieutenant Seman directed the others to place the blanket under Caldwell, stating, "He can't lay on just the bed frame. Put that blanket under him." (*Id*. ¶ 22.) Further, after Caldwell had been secured in the 5-point restraints, he requested that Defendants Nurse Jane Doe, Lieutenant Seman, and Captain Sleboda

3

take photographs of his wrists and forehead. (*Id.* ¶ 23.) All of these Defendants refused to take the photographs. (*Id.* ¶ 24.)

Caldwell remained in the cell in 5-point restraints until 8:00 a.m. the next morning. (*Id.* ¶ 25.) At that time Defendants Lieutenant Souchick and Sergeant Majchko informed Caldwell that they were removing the 5-point restraints in order to fit him with a "turtle suit." (*Id.* ¶ 26.) He was then handcuffed and shackled, led out of the cell into the corridor and placed into a "turtle suit." (*Id.* ¶¶ 27-29.) Upon return to the cell, Defendants Lieutenant Souchick and Sergeant Majchko placed a hard white mattress on the steel bed frame, but on an angle against the wall. (*Id.* ¶¶ 30, 32.) Caldwell was then placed on the mattress and secured with 5-point restraints. (*Id.* ¶ 31.) Due to the angle of the mattress, Caldwell's neck was bent at almost a 90-degree angle and resultantly he began to experience severe neck pain. (*Id.* ¶¶ 33-34.) He asked Defendant Officer Coslett on three separate occasions to adjust the mattress in order to alleviate the pain, but received no response. (*Id.* ¶¶ 35-36.)

Approximately two hours later, or about 12:30 p.m., Defendant Nurse Jane Doe entered the cell to examine Caldwell. (*Id.* ¶ 37.) He informed her of the pain he was experiencing as a result of the angle of the mattress and asked if she could reposition it. (*Id.* ¶¶ 39-40.) She responded, "I can't do anything about that. I'm here to make sure your pulse is right and that's it." (*Id.* ¶ 41.) Caldwell then asked Defendant

4

Nurse Jane Doe to take photographs of his wrists, his forehead, and his legs, but she did not respond. (*Id*. ¶¶ 42-43.)

At 2:00 a.m., another nurse arrived at the cell to check on Caldwell. (*Id*. ¶ 44.) When he told her about pain in his shoulder due to the positioning of the mattress and the tight restraints, she felt his fingertips and toes. (*Id*. ¶¶ 46-47.) Afterwards, she stated to Defendants Lieutenant Seman and John A. Doe, "Well he is kinda cold." (*Id*. ¶ 48.) They responded by giving her a dirty look. (*Id*. ¶ 49.) However, when all three individuals were leaving the cell, the registered nurse asked Caldwell if he needed anything, and he requested motrin for his pain. (*Id*. ¶¶ 50-51.) She then left the cell, but returned a few minutes later with two motrin and informed Caldwell that she was going to schedule him for x-rays of his right shoulder because she could "see that your [sic] in obvious pain." (*Id*. ¶¶ 53-55.)

Caldwell was released from the 5-point restraints at 11:00 a.m. on February 19, 2009. (*Id*. ¶ 58.) He was permitted to shower, but showering was difficult due to the pain in his neck and shoulder. (*Id*. ¶¶ 59-60.) After he showered, he was placed back in his cell, but without 5-point restraints, and served lunch at approximately 12:30 p.m. (*Id*. ¶¶ 61-63.)

##### 2.   **March 11, 2009 Incident**

On March 11, 2009, at 9:45 p.m., Defendant Lieutenant Seman ordered the IRT to remove Caldwell from his RHU cell for allegedly banging on his cell door.  (*Id*. ¶¶ 65-68.)  At that time, all the inmates in the RHU were banging on their cell doors, but Defendant Lieutenant Seman ordered only Caldwell removed.  (*Id*. ¶¶ 69, 71-77.)  Caldwell heard another inmate admit to Defendant Lieutenant Seman that it was he, not Caldwell, who was banging on his cell door.  (*Id*. ¶ 70.)  Further, when Caldwell told Defendant Lieutenant Seman that he had not been banging on his cell door, the Lieutenant stated, "I don't care who it was.  I said it was you, and I'm going to eliminate my problem early."  (*Id*. ¶¶ 78-81.)  Caldwell was then escorted to the RHU shower area and strip searched.  (*Id*. ¶¶ 82-83.)  After being strip searched, he was taken to a new cell and placed in 5-point restraints.  (*Id*. ¶¶ 84-87.)  As he was being placed in restraints, he asked Defendants Lieutenant Seman and Captain Sleboda for the time, but was ignored.  (*Id*. ¶ 85.)

Approximately two hours later, Defendants Officer Luchetti and Nurse Jane Doe entered the cell to check on Caldwell.  (*Id*. ¶¶ 88, 90.)  Caldwell requested that photographs be taken of his wrists, which were swollen and bleeding from the tight restraints, but was ignored.  (*Id*. ¶ 89-91.)  He also requested a blanket from Defendants Officer Luchetti, Lieutenant Seman, and Officer Domagaller, but each

refused. (*Id*. ¶¶ 94.) As a result, he was left without a blanket and dressed only in a "turtle suit" in a cell with two broken windows and an air vent directly above his bed. (*Id*. ¶ 93.) Prior to being released from the 5-point restraints, he was served a meal at 9:00 a.m. on March 12, 2009, but only his arms were released, resulting in him eating his meal "just sitting up, with no back support." (*Id*. ¶¶ 96-99.) At 1:30 p.m., he was released from the 5-point restraints and escorted back to his cell in handcuffs and shackles by Defendant Officer Hall. (*Id*. ¶¶ 102-104.)

### 3. April 15, 2009 Incident

On April 15, 2009, at approximately 6:30 p.m., while Caldwell was in the shower, Defendants Officer Mitkowski and Sergeant Belluda searched his cell in the RHU. (*Id*. ¶ 176.) In his cell at that time was paperwork pertaining to the instant action. (*Id*. ¶ 177.) Caldwell saw the Defendants enter his cell and yelled from the shower, "Can you wait till I am present to search my cell," but was ignored. (*Id*. ¶¶ 178-80.) After searching his cell, Defendant Officer Mitkowski placed Caldwell in handcuffs in preparation for escorting him back to his cell with Defendant Sergeant Balluda. (*Id*. ¶¶ 184, 188.) Caldwell asked for a grievance form and was ignored. (*Id*. ¶ 182.) At some point, Defendant Officer Mitkowski placed a "teather" on the handcuffs and began pulling Caldwell's hands through the shower wicket with "unnecessary extreme force," causing his hands to bleed and swell severely. (*Id*. ¶¶

7

186-87.)  Once they reached the cell, Defendant Officer Mitkowski used force to pull Caldwell's arms through the cell's wicket, causing his arms to bleed from cuts and scrapes.  (*Id*. ¶¶ 189-90.)  When Caldwell entered his cell, he observed that his "civil suit paperwork" was wet and thrown about the cell.  (*Id*. ¶ 191.)

### 4.  <u>May 26, 2009 Incident</u>

On April 17, 2009, Caldwell was charged with twelve (12) counts of terroristic threats resulting from various incidents allegedly taking place at LCCF between August 2008 and April 2009.  (*Id*. ¶¶ 192, 244-45.)  On May 26, 2009, he was transported to court for a preliminary hearing.  (*Id*. ¶ 195.)  During the hearing, five of the Defendants in the instant action testified: Defendants Seman, Luchetti, Bleich, Lutton, and Perriguno.  (*Id*. ¶ 197.)

After Caldwell was transported back to LCCF and given recreation time, at 3:30 p.m., Defendant Officer Bleich arrived to escort Caldwell back to his cell.  (*Id*. ¶ 198.) On the walk back from recreation, Defendant Officer Bleich punched Caldwell in the back of the head and stated, "See tough guy we always have the last word."  (*Id*. ¶ 201.)  Caldwell asked to speak with a "white shirt" and was refused.  (*Id*. ¶ 202.)

### 5.  <u>May 27, 2009 Incident</u>

On May 27, 2009, at 8:30 p.m., while Caldwell was in the shower, he asked Defendant Lieutenant Ameen for soap.  (*Id*. ¶ 203.)  Defendant Lieutenant Ameen

refused to give soap to Caldwell. (*Id.* ¶ 204.) As a result, Caldwell announced that he would not get out of the shower until he was given soap. (*Id.* ¶ 205.) Defendant Lieutenant Ameen stated, "get out or we will take you out," but Caldwell still refused to get out of the shower. (*Id.* ¶¶ 206-07.)

Defendant Lieutenant Ameen then called in Defendant Captain Carey and the IRT. (*Id.* ¶ 208.) When Defendant Captain Carey asked Caldwell to cuff up, he cooperated. (*Id.* ¶¶ 209-10.) After he was placed in handcuffs, an unidentified individual punched and slapped him in the back. (*Id.* ¶ 211.) Caldwell was then placed in a strip cage and ordered to strip by Defendants Lieutenant Ameen and Captain Carey. (*Id.* ¶ 212.) Caldwell refused, stating, "I refuse to strip until I receive pictures of my eye and pictures of my wrist." (*Id.* ¶ 213.) In response to Defendant Captain Carey's statement, "I'm going to ask you once more to 'strip,'" Caldwell again stated that he wanted photographs of his "markings." (*Id.* ¶¶ 214-15.) Defendant Captain Carey then maced him and directed the IRT to remove him from the strip cage. (*Id.* ¶ 216.) However, before he was removed, members of the IRT, including Defendant Officers Bleich, Lutton, Mitkowski, Perriguno, and Morris, used physical force upon Caldwell. (*Id.* ¶¶ 219-227.) Defendants slammed him onto the floor, kicked and punched him, which caused his head to split open. (*Id.* ¶¶ 221-22.) Also, while he was on the floor, Defendant Officers Perriguno and Lutton placed their

knees on Caldwell's neck and Defendant Officers Mitkowski and Morris tased him in the neck and head with a hand-held taser and an electric shield. (*Id.* ¶ 223-24.) Defendant Captain Carey was yelling, "stop resisting," during the incident. (*Id.* ¶ 225.) Afterwards, Caldwell was placed in handcuffs and shackles while five corrections officers were on top of him. (*Id.* ¶ 226.) He was then escorted to the RHU by Defendant Officers Morris, Mitkowski, Lutton, Bliech, and Perriguno, in the presence of Defendants Captain Seman and Sergeant Pointkowski. (*Id.* ¶ 228.) Once in his RHU cell, he was placed in 5-point restraints, and remained strapped down from Wednesday, May 27, 2009 at 9:30 p.m. to 9:30 a.m. on May 28, 2009. (*Id.* ¶¶ 229, 231.) During those hours, Caldwell was checked on by a corrections officer Norman Surma. (*Id.* ¶ 232.)

On May 29, 2009, Caldwell wrote a letter to Defendants Major Larson and Deputy Warden Hyder stating that he feared for his life and requested a transfer to another facility. (*Id.* ¶ 233.) Defendant Major Larson responded, stating, "their [sic] is no reason for you to fear for your life." (*Id.* ¶ 234.) However, Caldwell was transferred to Lackawanna County Prison in Scranton, Pennsylvania, on June 3, 2009.[2] (*Id.* ¶ 235.)

---

[2] It appears from Caldwell's latest filing in the court's electronic filing system that Caldwell has subsequently been transferred back to LCCF. (*See* Doc. 60.)

## B.    Procedural History

On March 25, 2009, Caldwell and five other inmates filed a complaint.  (Doc. 1.)  By order dated May 11, 2009, the action was dismissed without prejudice as to Plaintiffs Guido M. Moscatelli, Carleek Jones, Clyde D. Owen, and Sinard Ballard for failure to pay the filing fee or submit an application to proceed *in forma pauperis*. (*See* Doc. 14.)  Caldwell did submit an application to proceed *in forma pauperis* and was directed to file an amended complaint.  (*See id*.)  He filed an amended complaint on May 27, 2009.  (Doc. 18.)  However, on September 8, 2009, Caldwell filed a motion to amend his complaint, along with a proposed amended complaint.  (Doc. 28.) By order dated September 11, 2009, the court granted Caldwell's motion, his amended complaint was accepted for filing, and service of that complaint was directed.  (Doc. 29.)

On January 7, 2010, Defendants filed a motion to dismiss the amended complaint, (Doc. 49), followed by a supporting brief on February 1, 2010, (Doc. 58). Caldwell filed his brief in opposition to the motion on February 10, 2010.  (Doc. 59.) Defendants filed a reply brief on March 1, 2010.  (Doc. 62.)  Thus, this matter is now ripe for disposition.

## II. **Motion to Dismiss Standard**

Among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Fair notice" in Rule 8(a)(2) "depends on the type of case – some complaints will require at least some factual allegations to make out a showing that the pleader is entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quotation omitted). "[A] situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." *Id*. A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief. *Twombly*, 550 U.S. at 555; *accord, e.g., Phillips*, 515 F.3d at 231-32; *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (the court is not "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation.") (quotations and citations omitted)); *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). *See also Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937, 1949 (2009) (recognizing that Rule 8 pleading standard "does

not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (quoting *Twombly*, 550 U.S. at 555).

A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). *Accord Phillips*, 515 F.3d at 233. If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss. *Twombly*, 550 U.S. at 555, 570; *Phillips*, 515 F.3d at 234; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); *Stevenson v. Carroll*, 495 F.3d 62, 66 (3d Cir. 2007). *See Iqbal*, 129 S. Ct. at 1949 (explaining a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Further, when a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950. However, a court is "not bound to accept as true a

legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted). However, the court may not rely

14

on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Youse v. Carlucci*, 867 F. Supp. 317, 318 (E.D. Pa. 1994). Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 127 S. Ct. at 2200 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g.*, *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

III.    **Discussion**

A plaintiff, in order to state a viable § 1983 claim, must plead two essential elements: 1) that the conduct complained of was committed by a person acting under

15

color of state law, and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). A defendant's conduct must have a close causal connection to plaintiff's injury in order for § 1983 liability to attach. *Martinez v. California*, 444 U.S. 277, 285 (1980).[3] A prerequisite for a viable civil rights claim is that a defendant directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). On its face, § 1983 creates no exceptions to the liability it imposes, nor does it speak of immunity for any individual who might deprive another of civil rights. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993). Nevertheless, it is well-settled that certain government officials possess immunity from § 1983 liability. *Id.*

In his amended complaint, Caldwell asserts claims of excessive use of force and/or cruel and unusual punishment under the Eighth Amendment, denial of medical care, and retaliation in connection with the aforementioned incidents. The court will discuss these claims in turn.

---

[3] The Court in *Martinez* explained: "Although a § 1983 claim has been described as 'a species of tort liability,' *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L. Ed. 2d. 128 [(1976)], it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." *Martinez*, 444 U.S. at 285.

## A.    Eighth Amendment

The Eighth Amendment prohibits cruel and unusual punishment, which includes the unnecessary and wanton infliction of pain by prison officials.  U.S. CONST. AMEND. VIII.; *see also Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  The Eighth Amendment both restrains prison officials from applying excessive force against inmates, *see Hudson v. McMillian*, 503 U.S. 1, 5 (1992), and it imposes affirmative duties on prison officials to provide humane conditions of confinement, *see Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994).  Here, Caldwell alleges that Defendants have violated the Eighth Amendment both by applying excessive force and by failing to provide humane conditions of confinement.  The two standards are set forth herein.

### 1.    Excessive Force

In order for a prisoner to state an Eighth Amendment claim for the excessive use of force by a prison official, he must establish that the force was not applied in a good-faith effort to maintain or restore discipline, but that it was maliciously and sadistically used to cause harm.  *Hudson*, 503 U.S. at 7.

> In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) 'the need for the application of force;' (2) 'the relationship between the need and the amount of force that was used;' (3) 'the extent of injury inflicted;' (4) 'the extent of the threat to the safety of staff and

inmates, as reasonably perceived by responsible officials on the basis of
the facts known to them;' and (5) 'any efforts made to temper the severity
of a forceful response.'

*Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley*, 475 U.S. at 321).

The prisoner need not show significant injury to state an excessive use of force claim.

*Hudson*, 503 U.S. at 8, 10. However, "[t]hat is not to say that every malevolent touch

by a prison guard gives rise to a federal cause of action. The Eighth Amendment's

prohibition of 'cruel and unusual' punishments necessarily excludes from

constitutional recognition *de mimimis* uses of physical force, provided that the use of

force is not of a sort repugnant to the conscience of mankind." *Id*. at 9-10 (citations

omitted). Further, an inmate who complains of a "push or shove" that causes no

discernible injury "almost certainly fails to state a valid excessive force claim."

*Wilkins v. Gaddy*, – U.S. – , 130 S. Ct. 1175, 1178 (Feb. 22, 2010) (citing *Hudson*,

503 U.S. at 9).

Moreover, in assessing a claim of cruel and unusual punishment, a court must

bear in mind that "a prison's internal security is peculiarly a matter [for] the discretion

of prison administrators." *Whitley*, 475 U.S. at 321 (quoting *Rhodes*, 452 U.S. at 349

n.14)). Prison officials "should be accorded wide-ranging deference in the adoption

and execution of policies and practices that in their judgment are needed to preserve

internal order and discipline and to maintain institutional security." *Id.* at 321-22

18

(quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). As a general rule, judges should not second guess decisions made by prison administrators faced with disturbances or other emergencies affecting prison security. *Id*. at 322.

Examining the circumstances of this case under the *Whitley* factors, as well as viewing Caldwell's allegations in a light most favorable to him, the court concludes that a reasonable trier of fact may conclude that Caldwell has set forth claims of excessive force with respect to the incidents of February 18, 2009, March 11, 2009, April 15, 2009, and May 27, 2009. As a result, the court will deny the motion to dismiss as to these incidents.[4]

However, with respect to the incident of May 26, 2009, it cannot be said that the actions taken by Defendant Officer Bleich on that date rise to the level of a constitutional violation. The fact that on that date Defendant Officer Bleich punched Caldwell once in the back of the head is not the type of condition which rises to the level of an Eighth Amendment violation. *See Reyes v. Chinnici*, 54 F. App'x 44, 47 (3d Cir. 2002) (holding officer's punch of an inmate was not excessive force); *Brown v. Vaughn*, No. 91-2198, 1992 WL 82310, at *2 (E.D. Pa. Apr. 13, 1992) (granting summary judgment where corrections officer initiated violence by punching plaintiff-

---

[4] In their brief in support of the instant motion, Defendants discuss each Defendant and Caldwell's corresponding allegations. However, in his amended complaint, Caldwell asserts his claims against the named Defendants individually and presumably as the Immediate Response Unit. At this stage of the litigation, the court will not dismiss individual Defendants.

inmate once, and pushing, spitting, verbally abusing, and using racial slurs against him).  Instead, at best, Caldwell has shown only a *de minimis* use of force by Defendant Officer Bleich.  As a result, Defendants' motion to dismiss will be granted as to the claims arising out of the May 26, 2009 incident.

### 2.    Conditions of Confinement

The Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs, such as the basic human need for reasonable safety, adequate physical space, and the need for some degree of ventilation and fresh air.  *Helling v. McKinney*, 509 U.S. 25, 32 (1993).  However, the Eighth Amendment does not mandate that prisons be free of discomfort.  *Farmer*, 511 U.S. at 833 (quoting *Rhodes*, 452 U.S. at 349).  "No static test determines whether conditions of confinement are 'cruel and unusual.'  These terms must 'draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society." *Tillery v. Owens*, 719 F. Supp. 1256, 1261 (W.D. Pa. 1989) (citing *Rhodes*, 452 U.S. at 346).  Conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.  *Rhodes*, 452 U.S. at 348.

To establish an Eighth Amendment claim, Caldwell must show that he has been deprived of "the minimal civilized measure of life's necessities."  *Griffin v. Vaughn*,

112 F.3d 703, 709 (3d Cir. 1997) (quoting *Young v. Quinlan*, 960 F.2d 351, 359 (3d

Cir. 1992)). This includes showing that the conditions of his confinement pose "a

substantial risk of serious harm" to his health or safety. *Farmer*, 511 U.S. at 834. In

reviewing this type of claim, courts have stressed the duration of the complainant's

exposure to the alleged unconstitutional conditions and the "totality of the

circumstances" as critical to a finding of cruel and inhumane treatment. *Rhodes*, 452

U.S. at 362-63. Moreover, the focus must be on the deprivation of a particular basic

necessity. As explained by the United States Supreme Court:

> *Some* conditions of confinement may establish an Eighth Amendment
> violation "in combination" when each would not do so alone, but only
> when they have a mutually enforcing effect that produces the deprivation
> of a single, identifiable human need such as food, warmth, or exercise -
> for example, a low cell temperature at night combined with a failure to
> issue blankets. To say that some prison conditions may interact in this
> fashion is a far cry from saying that all prison conditions are a seamless
> web for Eighth Amendment purposes. Nothing so amorphous as "overall
> conditions" can rise to the level of cruel and unusual punishment when
> no specific deprivation of single human need exists.

*Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991) (citations omitted); *see also Tillery v.*

*Owens*, 907 F.2d 418, 427 (3d Cir. 1990) (elaborating on factors to be considered,

including "food, medical care, sanitation, control of vermin, lighting, heating,

ventilation, noise level, bedding, furniture, education and rehabilitation programs,

safety and security and staffing") (citing *Peterkin v. Jeffes*, 855 F.2d 1021, 1025-26 & n.7 (3d Cir. 1988)).

In addition to showing conditions that pose a significant risk of serious harm, the inmate must show that the person or persons responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298. As described by the Supreme Court in *Farmer*, the standard for determining deliberate indifference in a conditions of confinement case is whether a prison official knew of and disregarded an excessive risk to an inmate's health or safety. *Farmer*, 511 U.S. at 837. The Court added that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." *Id*. at 842.

In the instant case, Caldwell asserts that he was subjected to conditions which amounted to cruel and unusual punishment when he was placed on a mattress at an awkward angle for over 12 hours and subjected to severe pain on February 18, 2009, not permitted to use the bathroom, eat and drink, or shower, while placed in 5-point restraints for many hours over the course of the four incidents at issue here, and was refused a blanket on March 12, 2009, while restrained in a cell with broken windows and an air vent blowing directly on him. Viewing these allegations in a light most favorable to Caldwell, at this stage of the litigation, the court finds that Caldwell has pled facts sufficient to raise a right to relief above the speculative level. *See Twombly*,

550 U.S. at 555. Further, viewing such conditions under the totality of the circumstances, namely, as occurring in four alleged incidents over a period of four months, a reasonable trier of fact may conclude that Caldwell has set forth a conditions of confinement claim. As a result, the court will deny the motion to dismiss as to these claims.

### 3. Denial of Medical Care

To demonstrate a *prima facie* case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, a plaintiff must establish that the defendant acted with "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993). There are two components to this standard: Initially, a plaintiff must make an "objective" showing that the deprivation was "sufficiently serious," or that the result of the defendant's denial was sufficiently serious. Additionally, the plaintiff must make a "subjective" showing that the defendant acted with "a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002).[5]

---

[5] The "deliberate indifference to serious medical needs" standard is obviously met when pain is intentionally inflicted on a prisoner, where the denial of reasonable requests for medical treatment exposes the inmate to undue suffering or the threat of tangible residual injury, or when, despite a clear need for medical care, there is an intentional refusal to provide that care. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (quoting *White v. Napolean*, 897 F.2d 103, 109 (3d Cir. 1990); *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987).

This test "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment." *Little v. Lycoming County*, 912 F. Supp. 809, 815 (M.D. Pa. 1996) (citing *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979), quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

When an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. *Nottingham v. Peoria*, 709 F. Supp. 542, 547 (M.D. Pa. 1988). Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Lanzaro*, 834 F.2d at 346. Only flagrantly egregious acts or omissions can violate the standard. Medical negligence alone cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a health care provider. *White*, 897 F.2d at 108-10; *see also Estelle*, 429 U.S. at 105-06 (medical malpractice is insufficient basis upon which to establish an Eighth Amendment violation); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) ("It is well-settled that claims of negligence and medical malpractice, without some more culpable state of mind, do not

constitute 'deliberate indifference.'"); *Lanzaro*, 834 F.2d at 346 (mere allegations of malpractice do not raise issues of constitutional import).

In the instant case, viewing the facts in a light most favorable to Caldwell, the court finds that Caldwell has not pled facts sufficient to state a claim that Defendants were deliberately indifferent to his serious medical needs. Specifically, in his amended complaint Caldwell himself asserts that he did receive medical treatment for his injuries resulting from the restraints and Defendants' use of force. He states that he received treatment on multiple occasions and was prescribed motrin. Further, he does not assert any delay in such treatment. Caldwell's claims are clearly over a dissatisfaction with the results of treatment rather than a denial of treatment itself. An inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *Durmer*, 991 F.2d at 69; *Spruill*, 372 F.3d at 235. Courts will not second guess whether a particular course of treatment is adequate or proper. *Parham v. Johnson*, 126 F.3d 454, 458 n.7 (3d Cir. 1997). Under the circumstances alleged in the amended complaint, the court cannot draw a reasonable inference that Defendants are liable for a deliberate indifference to Caldwell's medical needs. Thus, the court will grant the motion to dismiss as to this claim.

**B.**    **Retaliation**

Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. *See Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000). In the prison context, an individual's rights are lessened, but not extinguished, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. *See Turner v. Safley*, 482 U.S. 78, 89 (1987). To prevail on a retaliation claim under 42 U.S.C. § 1983, a plaintiff must demonstrate (1) that he was engaged in protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001) (quoting *Allah*, 229 F.3d at 225).

With respect to the first prong, the filing of a lawsuit is protected conduct that clearly falls within the ambit of the First Amendment. *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *see also Allah*, 229 F.3d at 224 (noting that it is well settled that "prisoners have a constitutional right to access to the courts"). The First Amendment is implicated in cases in which prisoners allege that they have suffered adverse actions in retaliation for filing lawsuits. *Peterkin v. Jeffes*, 855 F.2d 1021, 1036 (3d Cir. 1988); *Cook v. Boyd*, 881 F. Supp. 171, 176 n.4 (E.D. Pa. 1995). Here, in his amended complaint, Caldwell claims that the Defendants' conduct reflects

retaliation for his filing of lawsuits against them, which satisfies the protected conduct element.

Next, the prisoner must show that he has suffered some adverse action at the hands of prison officials. *See Rauser*, 241 F.3d at 333 (citing *Allah*, 229 F.3d at 225)). A prisoner can satisfy this prong by demonstrating that the action was sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *See id.* Here, Caldwell contends that because certain Defendants discovered that he was filing a lawsuit against them, all Defendants participated in subjecting him to excessive force and unconstitutional conditions of confinement.[6] Clearly, such actions in response to filing a lawsuit would be considered adverse.

The third prong requires the prisoner to show "a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Rauser*, 241 F.3d at 333. To demonstrate this link, the prisoner must prove that his constitutionally protected conduct was "a substantial or motivating factor" in the decision to take adverse action against him. *Id.* (citing *Mount Healthy Bd. of Educ. v.*

_____

[6] To the extent that Caldwell alleges that Defendants retaliated against him for filing a lawsuit against them by criminally charging him with counts of terroristic threats in Luzerne County, that claim will be dismissed, as it is the Luzerne County District Attorney's Office who brings criminal charges, not Defendants, and thus such adverse action cannot be attributed to any named Defendant.

*Doyle*, 429 U.S. 274, 287 (1977)).  In light of the discussion of the excessive force and conditions of confinement claims above, at this stage in the litigation the court cannot say that Caldwell will not be able to satisfy this prong of the retaliation claim upon discovery on the Eighth Amendment allegations.  Thus, the court will allow this claim to proceed.

**IV.**    **Conclusion**

For the reasons set forth herein, the motion to dismiss will be granted as to any claims arising from the May 29, 2009 incident.  Further the motion to dismiss will be granted as to the claim of denial of medical care.  In addition, the motion to dismiss will be granted as to Plaintiff's claim that Defendants retaliated against him by filing criminal charges against him.  The motion to dismiss will be denied as to all other claims.

An appropriate order follows.

   s/Sylvia H. Rambo
United States District Judge

Dated:  August 11, 2010.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSHUA CALDWELL,** | : | **CIVIL NO. 1:CV-09-00545** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **LUZERNE COUNTY CORRECTIONS** | : | |
| **FACILITY MANAGEMENT** | : | |
| **EMPLOYEES,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## O R D E R

In accordance with the accompanying memorandum, **IT IS HEREBY**

**ORDERED THAT**:

1) The motion to dismiss (Doc. 49) is **GRANTED** with respect to Plaintiff's claims arising out of the May 26, 2009 incident.

2) The motion to dismiss (Doc. 49) is **GRANTED** with respect to Plaintiff's claims relating to denial of medical care.

3) The motion to dismiss (Doc. 49) is **GRANTED** with respect to Plaintiff's claim that Defendants retaliated against him by filing criminal charges against him.

4) The motion to dismiss (Doc. 49) is **DENIED** with respect to the Plaintiff's claims of excessive force and conditions of confinement relating to the incidents dated February 18, 2009, March 11, 2009, April 15, 2009, and May 27, 2009.

5) Defendants are directed to file an answer to the amended complaint within thirty (30) days of the date of this order.

s/Sylvia H. Rambo
United States District Judge

Dated: August 11, 2010.